UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:25-cr-425-MSS-LSG

CRISTIAN DE JESUS RIVAS FERNANDEZ

**UNITED STATES' SENTENCING MEMORANDUM**

The Court should sentence the defendant, Cristian De Jesus Rivas Fernandez to a low-end guideline sentence of 135 months of imprisonment. In support thereof, the United States provides the following:

**Factual Background**

The defendant conspired to distribute approximately 2,914 kilograms of cocaine. According to the factual basis filed in this case in connection with the defendant's guilty plea, Doc. 52, the following are the facts in this case:

On or about August 18, 2025, a maritime patrol aircraft (MPA) sighted a go-fast vessel (GFV) in the international waters of the Caribbean Sea, approximately 130 nautical miles south of Jamaica (international waters). The MPA crew observed the GFV in a known drug trafficking area with three outboard engines and packages on deck.

The United States Navy Ship (USS) MINNEAPOLIS-SAINT PAUL was patrolling nearby with a Coast Guard law enforcement team onboard. The MPA crew observed the persons onboard the GFV jettison approximately 30 packages into

the water. The USS MINNEAPOLIS-SAINT PAUL launched a small boat with a Coast Guard boarding team to intercept the GFV. The boarding team obtained positive control of the GFV without any use of force, approximately 300 yards from where the GFV jettisoned the packages. This entire interaction occurred in international waters.

The Coast Guard then conducted a right of visit (ROV) boarding observing four people onboard. A master was identified, but they did not make a claim of nationality for the vessel. The defendant, Cristian De Jesus Rivas Fernandez, and his three co-defendants in this case were identified as the four crewmembers on the GFV.

Therefore, in accordance with 46 U.S.C. §§ 70502(c)(1)(A) and 70502(d)(1)(B), the U.S. Coast Guard treated the GFV as a vessel without nationality and therefore a vessel subject to the jurisdiction of the United States. At the time of interdiction by the Coast Guard, the GFV was seaward of the territorial seas of any nation and in international waters.

The Coast Guard recovered 40 jettisoned bales and located an additional 54 bales onboard the GFV. The Coast Guard performed two IONSCAN tests on the packages onboard the GFV, both testing positive for cocaine. The Coast Guard recovered a total of 94 bales of suspected cocaine. The contraband had an at-sea weight of approximately 2,914 kilograms.

The defendant, Cristian De Jesus Rivas Fernandez, willingly agreed to transport cocaine aboard the GFV with his codefendants and others. The purpose of

this agreement was to smuggle this cocaine through international waters and distribute the cocaine to other persons. The defendant knew the packages onboard the GFV contained five or more kilograms of cocaine and knew that the planned voyage was a drug smuggling venture.

**Procedural Background**

On September 2, 2025, the grand jury returned a two-count indictment against the defendants. Doc. 29. One count of that indictment charged the defendants with conspiring to distribute, and possess with the intent to distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine. *Id.* That indictment also charged the defendants with possessing with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine. *Id.*

On November 5, 2025, defendant Cristian De Jesus Rivas Fernandez pleaded guilty to Count One of the Indictment before United States Magistrate Lindsay S. Griffin. Docs. 52, 60. The Court adjudicated the defendant guilty, and the defendant's sentencing is scheduled for February 4, 2026. Doc. 63.

In the final presentence investigation report (PSR), the United States Probation Office has calculated the defendant's applicable guideline range of imprisonment for the underlying offense as 135-168 months based on a total offense level of 33 and a criminal history category of I under the United States Sentencing Guidelines. *See* Doc. 80 at 7. The United States agrees with that calculation.

## Minor Role

While not yet raised by the defendant, should he argue a minor role reduction applies, the United States opposes a minor role reduction for the defendant because the defendant performed a critical role in transporting a trafficking amount of cocaine over hundreds of miles on the open ocean from its source in South America to consumers abroad.

A defendant is not entitled to a minor role reduction unless the defendant shows that he was a minimal or minor participant in the offense. *See* USSG §3B1.2. The defendant bears the burden of establishing his entitlement to such adjustment by a preponderance of the evidence. *United States v. De Varon,* 175 F.3d 930, 939 (11th Cir. 1999).

The extent and nature of the defendant's role in the relevant conduct is the "foremost" factor in determining whether the defendant performed a minor role. *De Varon*, 175 F.3d at 940. Where, as here, the defendant cannot "establish that [he] played a relatively minor-role" in the crime of conviction, and not a relatively "minor role in any larger criminal conspiracy," the defendant should be denied a minor-role reduction. *Id.* at 944.

Before recent amendments to the Sentencing Guidelines, *De Varon* also permitted a court to "measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." 175 F.3d at 934. This prong involved a defendant "show[ing] that he was substantially less culpable

than the other participants in the conspiracy." *United States v. Reyes*, 279 F. App'x 802, 805 (11th Cir. 2008).

But the Sentencing Guidelines, as of November 1, 2025, state that a mitigating role adjustment shall apply in drug trafficking cases "regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity." § 2D1.1(e)(2)(B). In essence, this instruction eliminates the second prong of *De Varon* in drug trafficking cases. *See United States v. Brown,* 332 F.3d 1341, 1345 n.6 (11th Cir. 2003) (recognizing that an amendment to the Sentencing Guidelines only abrogated Eleventh Circuit precedent "to the extent that" it affected the holding's definition of "underlying offense"); *United States v. Duncan,* 400 F.3d 1297, 1305 (11th Cir. 2005) (explaining that the unaffected holdings of a partially abrogated decision remain binding under the prior-panel-precedent rule). Equally important, then, is that the Sentencing Guidelines left the first-prong analysis in *De Varon* untouched. *De Varon*'s first (and mandatory) factor thus continues to provide the framework for the Court's analysis.

The Sentencing Guidelines provide a non-exhaustive list of factors for courts to analyze under that framework:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

> > (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
> >
> > (v) the degree to which the defendant stood to benefit from the criminal activity.

§3B1.2 cmt. 3(c).

The revised Guidelines offer a few examples for when a court could reduce a sentence under § 3B1.2(a) in a drug trafficking case. They state that such a reduction is "generally warranted" when the defendant's responsibility primarily resulted from either performing a task "plainly among the lowest level of drug trafficking functions" or "performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation." § 2D1.1(e)(2)(B).

Those factors and examples demonstrate that this defendant is not eligible for a minor role reduction here because he did not perform a low-level drug trafficking function. *First*, the defendant understood the scope and structure of the criminal activity. *See* §3B1.2 cmt. 3(c)(i). He knew the task at hand was to navigate a trafficking amount of cocaine across the high seas, so that it could be smuggled into foreign countries. The defendant was one of four people on a go-fast vessel laden with 2,914 kilograms of cocaine. That vessel—with the support of its crew—embarked on a transnational voyage on the open ocean. It traveled hundreds of miles over a period of days or even weeks.

*Second*, the defendant was entrusted to help navigate that drug-laden vessel with minimal supervision. *See* §3B1.2 cmt. 3(c)(ii)-(iv) (providing that the "nature and extent" of the defendant's responsibilities are factors in analyzing whether he played a minor role); *De Varon*, 175 F.3d at 944. On a small vessel, each mariner takes significant responsibility in continuing to operate the vessel, even if the mariner is not the captain; in short, there are no bystanders on a smuggling vessel just along for the ride. For example, in *Mendez*, the Eleventh Circuit affirmed that a defendant was not entitled to a minor role reduction where the defendant "merely drove the boat" containing drugs, whereas his codefendants were, respectively, the captain and owners of the drugs. *United States v. Mendez*, No. 22-11601, 2025 WL 2732015, at *5 (11th Cir. Sept. 25, 2025). *See United States v. Monzo*, 852 F.3d 1343, 1347 (11th Cir. 2017) (considering, as part of the totality of the circumstances, that the defendant "participated in the distribution of high-purity [drugs], ... that he was responsible only for his direct role in the conspiracy, and that he was important to the scheme"). Like the defendant in *Mendez*, this defendant's participation in driving a drug-smuggling boat across the sea suffices to show that he performed more than a minor a role.

Furthermore, the defendant did not have a minor role because his actual conduct was coextensive with the relevant conduct. *See United States v. Alvarado-Forbes*, 247 F. App'x 203, 204 (11th Cir. 2007) (stating "the substantial amount of cocaine on the vessel was a material consideration" for denying minimal participant or minor role); *see also United States v. Cruickshank,* 837 F.3d 1182, 1195 (11th Cir.

7

2016) (reaffirming that the amount of drugs transported is a significant consideration in minor role analysis, but explaining that it may not be the *only* factor the court considers); *United States v. Alarcon,* 194 F. App'x 727, 731 (11th Cir. 2006) (holding that defendant who "conspir[ed] to import two kilograms of heroin" and "admitted [that] he had personally transported that amount into the country" was not eligible for a minor role). It defies precedent and logic that a defendant entrusted with cocaine having a wholesale value of millions of dollars and transporting the same across a broad expanse of ocean to another continent is held to the functional equivalent of a person transporting smaller amounts of narcotics at a fraction of the distance.

The new Guidelines keep intact the rule that a defendant cannot redefine the scope of "the criminal activity" by invoking the vast, multinational drug-trafficking enterprise that inevitably surrounds the maritime transportation of narcotics. *Compare* § 2D1.1(e)(2)(B), *with De Varon*, 175 F.3d at 944. The minor-role inquiry remains anchored in the defendant's relevant conduct, not the abstract hierarchy of a transnational cartel. *De Varon*, 175 F.3d at 944 (warning that a defendant "may not establish that he played a relatively minor role by pointing to a broader conspiracy in which he was a small player"). That principle remains unassailable in the Eleventh Circuit's maritime drug-trafficking cases. *See, e.g., Cabezas-Montano*, 949 F.3d at 607 (holding that crewmembers who moved a large quantity of high-purity cocaine through internationals waters played a serious and important role inconsistent with minor-role relief); *United States v. Gruezo*, 66 F.4th 1284, 1294 (11th Cir. 2023)

(holding that the defendant's involvement as a crewmember of a vessel smuggling a large quantity of drugs was serious and important enough to warrant the denial of a minor role reduction under § 3B1.2); *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015) ("only those participants who were involved in the relevant conduct attributed to the defendant may be considered."). Nothing in the revised Guidelines changes this foundational principle: a defendant's culpability is measured by the conduct for which he is held accountable, not by speculative reference to uncharged traffickers, financers, or producers.[1]

Accordingly, a defendant cannot satisfy his burden under *De Varon* merely by reciting the scale of the international cocaine trade and labeling himself a "low-level courier." Such a talismanic invocation does not establish a mitigating role by a preponderance of the evidence. *See De Varon*, 175 F.3d at 939. If a defendant were permitted to expand the "criminal activity" to encompass the entire production-to-distribution chain, the analysis would necessarily include the full scope, quantity, and value of that enterprise. These are precisely the considerations that render his contribution material, not minor. In other words, the argument is a double-edged sword: if the defense invites the Court to consider the whole scheme, it must accept

---

[1] This case tracks *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir. Oct. 20, 2016). There, an MDLEA defendant was sentenced "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* Among other things, the Eleventh Circuit emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Id.*

9

the corresponding breadth of culpability stemming from the higher quantity of the drugs involved.

In any event, the defendant's conduct here does not involve a "low level trafficking function." The Guidelines offers the example of a person who distributes controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit, like supporting his own addiction. § 2D1.1(e)(2)(B). This example aligns with the standard factors considered in *De Varon's* minor role analysis. A defendant who distributes controlled substances in user-level quantities typically holds smaller amounts of controlled substances—not the "hundreds of kilograms of narcotics" held by the defendant. *United States v. Medina*, 656 F. App'x 975, 981 (11th Cir. 2016). The fair market value of user-level quantities pales in comparison to the millions of dollars of cocaine that the defendant possessed.

*Third*, the defendant stood to substantially benefit from drug-trafficking venture. *See* §3B1.2 cmt. 3(c)(v). In contrast to the Guidelines' example, this defendant transported a trafficking, not a personal use amount, of cocaine to make a significant amount of money. *Cf.* § 2D1.1(e)(2)(B).

Receipt of little or no monetary compensation contrasts with the defendant here, who would receive an amount that significantly exceeds his monthly salary in exchange for his services. The defendant may rebut that his compensation for this smuggling venture pales in comparison to what high-level members of the conspiracy would reap from the venture. Not so. Much like *De Varon* cautions against nebulous

references to a broader conspiracy, so too should the Court decline to apply that analysis here, as it would tend to over-estimate the earnings of a figurative kingpin while disregarding a bevy of other factors with likely relevance here, for example:

- The number of investors in the cocaine load, as such substantial ventures often involve more than one;
- The costs of purchasing the cocaine from a clandestine laboratory;
- The costs of being permitted to operate in an area under guerilla control, as is so often the case in these ventures;
- The costs associated with paying workers responsible for transporting the cocaine from the laboratory, holding it in temporary storage locations, and transporting it to the dispatch site;
- The costs associated with paying for a vessel or the fabrication of a vessel, the purchase of multiple outboard engines, gasoline, and electronic equipment such as satellite phones and GPS devices; and
- The costs associated with paying the transportation organization responsible for planning the route, recruiting mariners for substantial fees, and dispatching the load.

Analysis of the potential gross profits of a successful venture is not persuasive to the minor role analysis. Indeed, aside from the leaders, organizers, managers, and supervisors, the mariners are in the upper band of financial compensation based on the complexity of the tasks assigned to them and the risks undertaken.

The defendant's role in distribution here also contrasts from the Guidelines' example. While a distributor in user-level quantities plays a small role—getting product to end users—the defendant here played an important role by facilitating the transport of almost 3,000 kilograms of cocaine across the ocean for redistribution. Whereas the Guidelines now offer minor role relief in circumstances where someone delivered a user-level quantity of narcotics, it does not extend to circumstances where a defendant delivers the equivalent of *millions* of user-quantity doses of cocaine.

Nor was the defendant a mere courier. The defendant and his coconspirators trafficked a large quantity of cocaine across the high seas. These defendants knew that they were involved in an illegal activity from the start and agreed to undertake the trip. *United States v. Gil-Ramirez*, 686 F. App'x 651, 654 (11th Cir. 2017) (no minor role for defendant who imported 2,414 grams of cocaine into the United States). They played a "transportation role[]" that involved "moving a large quantity of high-purity cocaine through international waters." *United States v. Cabezas-Montano*, 949 F.3d 567, 607 (11th Cir. 2020). This conduct splits from the classic drug trafficking courier, where an individual takes small amounts of drugs on their person or in a personal vehicle from one place to another or delivers product to end users in a transaction lacking the complexity of a transoceanic voyage. The Guideline focus on the lowest of the low, but these defendants were entrusted with millions of dollars' worth of cocaine. This role is "serious and important" to the scheme and thus is not eligible for a minor role reduction. *United States v. Gruezo*, 66

F.4th 1284, 1294 (11th Cir. 2023). Moreover, this defendant was assessed a Captain's enhancement based on his conduct. Doc. 82.

Therefore, consistent with *De Varon* and the structure of § 3B1.2 as amended, the Court's analysis should remain confined to the defendant's role within the relevant conduct, which is the transport of 2,914 kilograms of cocaine across international waters. That discrete conduct defines the offense of conviction, and within that context, the defendant cannot plausibly be characterized as a "minor" participant. Attempts to broaden the "criminal activity" to the entire supply chain are inconsistent with Eleventh Circuit precedent, the structure of § 3B1.2, and the logic of the amendment itself. The defendant's role here: navigating a multi-ton cocaine shipment across the high seas was indispensable to the operation and therefore not "minor" in any meaningful sense.

## **Sentencing Factors**

Sentencing judges should apply the United States Sentencing Guidelines in arriving at an appropriate sentence, but application of the USSG is not mandatory. *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, sentencing judges can exercise discretion in deviating from the USSG, if doing so would result in a reasonable sentence, taking into consideration other factors that Congress has enumerated in 18 U.S.C. § 3553(a).

Section 3553(a) requires that the sentence reflect:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant;
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the offense category in the guidelines;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Regarding the reasonableness of a USSG sentence, "'when the district court imposes a sentence within the advisory Guidelines range,'" the Eleventh Circuit "'ordinarily will expect that choice to be a reasonable one.'" *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

To arrive at an appropriate sentence, the district court must consider all the applicable Section 3553(a) factors. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). That does not mean, however, that it must give all the Section 3553(a) factors equal weight. Instead, the sentencing court "is permitted to attach 'great weight' to one factor over others." *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)). The decision about how much weight to assign a particular sentencing factor

is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).

The United States submits that a low-end Guidelines sentence is appropriate considering the nature and circumstances of the offense, the history and characteristics of the defendant, and other factors set forth under 18 U.S.C. § 3553(a). A significant departure or variance below the guidelines is unwarranted and would result in a sentence insufficient to meet the statutory purposes of sentencing. The defendant chose to participate in a conspiracy to traffic cocaine aboard on the high seas. Despite any personal circumstances or financial hardship that may have driven the defendant to take part in an international drug smuggling conspiracy, this case involves a serious drug trafficking offense and must be treated as such. *See U.S. v. Moreno*, 134 F. Appx. 339, 342 (11th Cir. 2005) (noting that U.S.S.G. 5K2.20(c)(3) foreclosed an aberrant behavior downward departure for serious drug trafficking offenses such as maritime drug smuggling).

Section 3553 makes clear that the Court is to impose a sentence that will help promote respect for the law, provide deterrence to the commission of any future offenses, and protect the public. *See* 18 U.S.C. § 3553. Had the defendant and his co-conspirators successfully completed their mission, immense harm to others could have arisen from the distribution and use of such a significant quantity of cocaine. Thus, a low-end guidelines sentence will serve Section 3553's various interests.

## CONCLUSION

The defendant pleaded guilty to the count one in this case, and he participated in a safety valve interview with agents of the United States regarding his offense. His offense level under the guidelines has been reduced for these reasons. The instant offense, which involved approximately 2,914 kilograms of cocaine, is however a very serious offense, and the defendant in this case was engaged in transporting cocaine on the high seas. For the foregoing reasons, the Court should sentence the defendant to a low-end guideline sentence.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By: */s/David W. Rehfuss*
David W. Rehfuss
Assistant United States Attorney
USAO No. 228
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: David.Rehfuss@usdoj.gov

U.S. v. Cristian De Jesus Rivas Fernandez    CASE NO. 8:25-cr-425-MSS-LSG

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

>Defense counsel of record.

>*s/David W. Rehfuss*
>David W. Rehfuss
>Assistant United States Attorney
>USAO No. 228
>400 N. Tampa St., Ste. 3200
>Tampa, FL 33602-4798
>Telephone: (813) 274-6000
>Facsimile: (813) 274-6358
>E-mail: David.Rehfuss@usdoj.gov